**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| R-SQUARED PUCKETT, INC. and SANHUA HANGZHOU MICRO CHANNEL HEAT EXCHANGER CO. LTD. | ) ) ) ) ) |
| Plaintiffs | ) ) |
| vs. | ) ) |
| | ) Court No. 1:20-cv-03820 |
| UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE; ROBERT E. LIGHTHIZER, U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS AND BORDER PROTECTION; MARK MORGAN, U.S. CUSTOMS AND BORDER PROTECTION ACTING COMMISSIONER | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiffs, R-Squared Puckett, Inc. and Sanhua Hangzhou Micro Channel Heat Exchanger Co. Ltd. ("R-Squared" and "Sanhua," respectively, and collectively referred to as the "Plaintiffs"), by and through their attorneys, Flannery | Georgalis, LLC, and for their Complaint against the Defendants, hereby allege as follows:

**NATURE OF THE ACTION**

1.    Plaintiffs commence this action to challenge the unlawful additional punitive duties imposed and collected by the Defendants arising from imposition of a fourth tranche of tariffs on certain Chinese-origin goods covered by subheadings of the Harmonized Tariff Schedule of the United States ("HTSUS"), as promulgated by Defendant, Office of United States Trade

Representative ("USTR"), and commonly known as "List 4A."[1]  The Trade Act of 1974 (the "Trade Act")[2] does not authorize the actions taken by USTR with respect to issuance of List 4A; specifically, USTR failed to promulgate List 4A (and "List 3" before it) in the time prescribed in Section 304 of the Trade Act[3] which requires USTR to determine what action to take, if any, within twelve (12) months after initiation of its investigation of China's unfair acts, policies and practices related to technology transfer and intellectual property, initiated under Section 301 of the Trade Act.  Moreover, USTR promulgated List 4A (and List 3 before it) without any further investigation or findings to support such actions.

2.      In addition to violations of the Trade Act as outlined above, the Plaintiffs commence this action to also challenge the unlawful additional punitive duties imposed and collected by the Defendants arising from USTR's actions in promulgating List 4A, as such action was arbitrary and, therefore, violates the Administrative Procedure Act (the "APA"), as evidenced by USTR failing to consider and address relevant factors when making its decision; not undertaking an analysis of the potential increased burden that would be imposed on U.S. parties and U.S. commerce from the unfair policies and practices that USTR actually investigated; and failing to support its chosen actions with record evidence.

3.      As a result of these violations of U.S. laws, the Plaintiffs request the Court to set aside Defendants' actions as *ultra vires* and otherwise contrary to the law.  Additionally, the Court should order Defendants to refund, with interest, all duties paid by the Plaintiffs pursuant to List 4A.

---

[1] *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR 43304 (August 20, 2019); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR 45821 (August 30, 2019).
[2] 19 U.S.C. § 2101 *et seq*. (as amended).
[3] 19 U.S.C. § 2414.

## JURISDICTION

4.      The Court has jurisdiction over this action for the reason that the Plaintiffs commence it pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers exclusive jurisdiction to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."

## PARTIES

5.      R-Squared is a U.S. subsidiary of Sanhua International, Inc., an Ohio corporation with its principal place of business located in Houston, and a manufacturer and distributor of certain Micro Channel Heat Exchangers ("MCHEs") for air conditioners.   R-Squared is headquartered in Puckett, Mississippi and at all times relevant to this action is an importer of Chinese-origin MCHEs into the United States.

6.      Sanhua is a manufacturer of certain MCHEs and supplier to R-Squared, and at all times relevant to this action is a non-resident importer of Chinese-origin MCHEs into the United States.  Sanhua's principal place of business is located in Hangzhou, China.

7.      Defendant United States of America received the unlawful additional punitive duties imposed under List 4A (and List 3A before it) that are at issue in this action and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

8.      Defendant Office of USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing appropriate responses to the same, subject to the direction of the President.  Relevant to this action, USTR conducted the underlying Section 301 investigation at issue in this action and

made decisions and took various actions that culminated in it promulgating List 4A, and List 3 before it.

9.     Ambassador Robert E. Lighthizer currently holds the position of USTR and serves as the director of the Office of the USTR.  In these capacities, he made decisions and took various actions relating to List 4A, and List 3 before it.

10.     Defendant CBP is an executive agency of the United States that collects duties on goods imported into the United States.  The Plaintiffs have paid duties to CBP for goods which they imported and continue to import into the United States and were and continue to be subject to the unlawful additional punitive duties imposed under List 4A that are at issue in this action.

11.     Defendant Mark A. Morgan is the Acting Commissioner of CBP.  In this capacity, he oversees CBP's collection of duties, including those paid by the Plaintiffs on goods they imported and continue to import into the United States that are subject to the unlawful additional punitive duties imposed under List 3 and List 4A that are at issue in this action.

## STANDING

12.     The Plaintiffs have standing to bring this action for the reason they are "adversely affected or aggrieved" by agency action within the meaning of the APA.[4]  The tariffs imposed and duties collected by the Defendants pursuant to List 4A have adversely affected and aggrieved the Plaintiffs because they were required to pay the unlawful additional punitive duties at the time they imported Chinese-origin goods covered by subheadings of the HTSUS on List 4A and which they are required to continue paying on their continuing importations of Chinese-origin MCHEs.

---

[4] 5 U.S.C. § 702; 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").

13.     Since the purported effective date of the unlawful additional punitive duties imposed on Chinese-origin goods covered by subheadings of the HTSUS on List 4A, the Plaintiffs have imported Chinese-origin MCHEs (8415.90.8085, HTSUS) which is covered by a subheading of the HTSUS on List 4A.

14.     As a result of such importations, to date the Plaintiffs have been required to pay to the Defendants unlawful additional punitive duties on MCHEs in excess of $5 million.

**TIMELINESS OF THE ACTION**

15.     Pursuant to 28 U.S.C. § 2636(i), a party is required to commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues."

16.     The unlawful additional punitive duties assessed on Chinese-origin MCHEs the Plaintiffs imported and are covered by a subheading of the HTSUS on List 4A were effective on entries for consumption and withdrawn from warehouse for consumption, on or after September 1, 2019, at the initial rate of 15% *ad valorem*,[5] after USTR originally proposed a tariff rate of 10%, just ten (10) days prior.[6]  Effective February 14, 2020, the tariff rate on Chinese-origin goods covered by HTSUS classifications on List 4A was reduced to 7.5% *ad valorem*.[7]

17.     This action to challenge the tariffs imposed and duties collected under List 4A is timely for the reason that it is commenced within two (2) years of the Plaintiffs paying the unlawful additional punitive duties imposed on Chinese-origin MCHEs covered a subheading of the HTSUS on List 4A.  The Plaintiffs's claims accrued no earlier than September 1, 2019 when imports of Chinese-origin goods covered by subheadings of the HTSUS on List 4A were imposed;

---

[5] 84 FR 45821.

[6] 84 FR 43304 ("Additional duties at a rate of 10 percent ad valorem on the tariff subheadings set out in Annex A to this notice are applicable with respect to products that are entered for consumption, or withdrawn from warehouse for consumption, on or after September 1, 2019.").

[7] *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 FR 3741 (January 22, 2020).

alternatively, the Plaintiffs's claims accrued no earlier than August 20, 2019, when USTR published notice of List 4A in the *Federal Register*. Accordingly, this action is timely for the reason that it is filed within two (2) years of USTR publishing List 4A in the *Federal Register*.

## RELEVANT LAW AND PROCEDURAL HISTORY

18.     Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices.[8] If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take appropriate action, including, without limitation, imposing tariffs on imports from the country determined to have engaged in the unfair practice.[9]

19.     Section 304 of the Trade Act requires USTR to determine what action to take, if any, within twelve (12) months after the *initiation* of the underlying investigation.[10]

20.     Section 307 of the Trade Act, in pertinent part, authorizes USTR to modify or terminate an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate."[11]

*USTR's Investigation*

21.     On August 14, 2017, President Trump directed USTR to consider initiating an investigation pursuant to Section 301(b) of the Trade Act relating to China's laws, policies, practices, and actions related to intellectual property, innovation, and technology.[12]

---

[8] 19 U.S.C. § 2411(b).
[9] *Id*. § 2411(b), (c)(1)(B).
[10] *Id*. § 2414(a)(1)(B), (2)(B).
[11] *Id*. § 2417(a)(1)(B), (C).
[12] *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 FR 39007 (August 17, 2017).

22. On August 18, 2017, USTR initiated an investigation to determine whether the acts, policies, and practices of the Government of China relating to technology transfer, intellectual property, and innovation were actionable under Section 301(b) of the Trade Act.[13]

23. In March 2018, USTR published its report relating to said investigation.[14]  USTR concluded that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce."[15]

24. In the *Section 301 Report*, USTR set forth several findings in support of its conclusion but did not quantify the burden or restriction imposed on U.S. commerce by the practices it investigated.

25. Instead, USTR published a "Fact Sheet" stating that an interagency team of experts and economists estimated that China's unfair practices and policies harm the U.S. economy of at least $50 billion per year.[16]  In light of its findings in the investigation, USTR further stated that it would propose additional tariffs of 25% *ad valorem* on certain goods of Chinese-origin, having an annual trade value commensurate with the harm caused to the U.S. economy.[17]

---

[13] *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 FR 40213 (August 24, 2017).

[14] OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (March 22, 2018), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF (the "*Section 301 Report*").

[15] *Id.* at 17.

[16] OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (March 22, 2018), *available at* https://ustr.gov/about- us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet.

[17] *Id.*; see *Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 13099 (March 27, 2018).

*List 1 and 2*

26.     From the time USTR released the *Section 301 Report* through August 2018, consistent with the 12-month deadline from the initiation of the investigation in August 2017, as prescribed by law,[18] USTR implemented various actions to address the estimated harm to the U.S. economy caused by the investigated unfair practices, culminating in promulgating additional punitive duties on certain Chinese-origin goods imported into the United States covered by subheadings of the HTSUS and set forth on certain lists, commonly known as  "List 1" and "List 2."

27.     On April 6, 2018, USTR published notice of its intent to impose an additional duty of 25% *ad valorem* on certain goods of Chinese-origin, covered by more than 1,300 subheadings of the HTSUS, having approximately $50 billion in estimated annual trade value for 2018,[19] an amount USTR determined was commensurate with an analysis of the estimated harm to the U.S. economy caused by China's unreasonable technology transfer policies, as covered by USTR's Section 301 investigation.[20]

28.     On June 20, 2018, USTR published notice of its final list of Chinese-origin goods subject to an additional punitive duty of 25% *ad valorem*, which became commonly known as

---

[18] 19 U.S.C. § 2414(a)(2)(B)).

[19] *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 14906-07 (April 6, 2018).

[20] OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products (April 3, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301- action-ustr.

"List 1."[21]  List 1 contained 818 subheadings of the HTSUS and USTR explained that the products covered had an approximate annual trade value of $34 billion.[22]

29.     In addition, USTR announced that it intended to impose a 25% *ad valorem* punitive duty on a second proposed list of Chinese-origin goods covered by 284 subheadings of the HTSUS and having an approximate annual trade value of $16 billion, which USTR stated would maintain the United States' effectiveness of a $50 billion trade remedy action supported by the *Section 301 Report*.[23]  This second proposed list became commonly known as "List 2."

30.     On August 16, 2018, a day within the 12-month period prescribed by law for USTR to take action after initiation of its Section 301 investigation, USTR published notice of the final list of Chinese-origin goods subject to an additional punitive duty of 25% *ad valorem* on List 2, consisting of 279 subheadings of the HTSUS, having an estimated annual trade value of $16 billion.[24]

*Lists 3 and 4*

31.     Subsequent to USTR's promulgation of List 1 and List 2, having a combined annual trade value of $50 billion and being commensurate with the above-referenced interagency analysis of harm to the U.S. economy due to the unfair trade practices of China, without further investigation or additional analysis of the estimated harm to the U.S. economy, USTR took actions to promulgate additional tariffs purportedly under authority of Section 301 of the Trade Act to

---

[21] *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 28710 (June 20, 2018).
[22] *Id.* at 28711.
[23] *Id.* at 28711-12.
[24] *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 40823, 40823-24 (August 16, 2018).

cover imports of Chinese-origin goods having an estimated annual trade value of $500 billion – ten (10) times the amount USTR had deemed to be the estimated harm to the U.S. economy.

*List 3*

32.     On or about June 18, 2018, President Trump formally directed USTR to consider whether the United States should impose *additional* duties on Chinese-origin goods with an estimated annual trade value of $200 billion for reasons unrelated to the findings set forth in the *Section 301 Report* and not commensurate with the estimated harm to the U.S. economy.[25]

33.     Acting in accordance with the President's directive, USTR announced that it would propose additional duties to address China's threatened retaliatory measures, but did not announce that it would further investigate China's acts, policies, and practices, or that USTR had determined the harm to the U.S. economy was more significant than the initially reported estimated harm of $50 billion.[26]

34.     Subsequently, on July 17, 2018, shortly after an additional punitive duty of 25% *ad valorem* was imposed on Chinese-origin goods covered by subheadings of the HTSUS on List 1, USTR published notice of its proposed action to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action . . . [to impose] an additional 10 percent *ad valorem* duty. . ." on Chinese-origin goods covered by additional subheadings of the HTSUS, stated to have an annual

---

[25] THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/.

[26] OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, USTR Robert Lighthizer Statement on the President's Additional China Trade Action (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses.").

trade value of approximately $200 billion.  In doing so, USTR purportedly relied on Section 307(a)(1)(C) of the Trade Act as the legal authority by which it could impose the *additional* punitive duties promulgated under Section 301 of the Trade Act.[27]  Initially, USTR set a deadline of August 17, 2018 for interested parties to submit comments on the proposed additional tariffs; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments.[28]

35.     In a *Federal Register* notice published on July 17, 2018, USTR stated the basis for the proposed imposition of the additional tariffs on Chinese-origin goods having an estimated trade value of approximately $200 billion was China's decision to impose countermeasure tariffs or so-called "retaliatory duties" on U.S.-origin goods, not because of a further investigation or revised determination of the harm to the U.S. economy due to findings made in the *Section 301 Report*.[29]

36.     Subsequently, USTR, at the direction of President Trump, formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent."[30]  Significantly, USTR also set new dates for the submission of written comments, setting September 6, 2018 - less than one (1) month later - as the deadline for both *initial and rebuttal* public comments from the public, and holding a public hearing over six (6) days ending on August 27, 2018, limiting testimony from each witness to a scant five (5) minutes.[31]

37.     By compressing the deadline for submitting public comments, requiring initial and rebuttal comments to be submitted on the same day, and limiting the time for testimony, USTR

---

[27] *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 33608 (July 17, 2018).
[28] *Id*.
[29] *Id*., 33609.
[30] *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 38760 (August 7, 2018).
[31] *Id*., 38761; Docket No. USTR-2018-0026, *available at* https://beta.regulations.gov/document/USTR-2018-0026-0001.

departed from its past practices and effectively deprived interested parties of meaningful opportunities to be heard on the proposed additional round of tariffs.

38.     Despite USTR's actions to effectively deprive interested parties of a meaningful opportunity to respond to the proposed additional round of tariffs, approximately 350 witnesses appeared at the six-day hearing, and interested parties submitted over 6,000 comments.[32]

39.     Subsequently, USTR published notice of the final list of certain goods of Chinese-origin, covered by additional subheadings of the HTSUS, subject to an additional punitive duty, a list commonly known as "List 3."[33]  USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019, with the additional duties promulgated under List 3 applying to Chinese-origin goods covered by listed subheadings of the HTSUS entering the United States on or after September 24, 2018.  Significantly, prior to taking this action, USTR did not respond to any of the over 6,000 comments that it received or address any of the testimony given by approximately 350 witnesses over six (6) days of the public hearing.[34]

40.     As the purported legal support for its action, USTR cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased."[35]  USTR further stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP

---

[32] Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001.
[33] *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 FR 47974 (September 21, 2018).
[34] *Id.*
[35] *Id.* (brackets omitted).

polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies."[36]  USTR also cited Section 307(a)(1)(C) of the Trade Act, stating that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China."[37]

41.     Ultimately, in May 2019, USTR announced its intent to raise the tariff rate Chinese-origin goods covered by the HTSUS subheadings on List 3 to 25%, *ad valorem*, effective either May 10, 2019 or June 1, 2019, depending on the day of export.[38]  USTR did not base the proposed increase on new findings with respect to China's acts, policies, and practices related to technology transfer, intellectual property, or innovation or a revised determination of the harm to the U.S. economy as a result of such acts, policies, and practices.  Rather, USTR cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate.[39]  Significantly, USTR failed to request public comment on the proposed increase, departing from its prior practice to do so.[40]

_List 4_

42.     Shortly after USTR published notice of its intent to increase the duty rate on Chinese-origin goods covered by the subheadings of the HTSUS on List 3, USTR announced its

---

[36] *Id.*

[37] *Id.*, 47975.

[38] *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR 20459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); see also *Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR 21892 (May 15, 2019).

[39] *List 3 Rate Increase Notice*, 84 FR 20459.

[40] *Id.*

intent to proceed with a further round of Section 301 tariffs, as designated on what is commonly known as "List 4," on additional Chinese-origin goods covered by additional subheadings of the HTSUS.  Under USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products having an estimated annual trade value of $300 billion.[41]  In its notice, USTR stated that its decision was in response to China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce."[42] USTR did not state that it would further investigate China's act, policies, and practices that were the subject of the *Section 301 Report* or that the proposed additional tariff action was based on a revised determination of the harm such acts, policies, and practices caused to the U.S. economy.

43.    Similar to the limited process for public comment and public hearing it followed with respect to the then-proposed List 3, USTR invited interested parties to submit comments on proposed List 4 and participate in a public hearing.[43]  USTR received nearly 3,000 written comments.[44]

44.    On August 20, 2019, USTR issued a final notice splitting List 4 in two (2) tranches – List 4A would impose a 10% *ad valorem* duty on certain Chinese-origin goods covered by particular subheadings of the HTSUS having an estimated annual trade value of $120 billion, effective September 1, 2019.[45]  A second list – "List 4B" - would impose a 10% *ad valorem* duty on additional goods, effective December 15, 2019.[46]  As was the case with List 3, USTR failed to

---

[41] *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR. 22,564, 22,564 (May 17, 2019).
[42] *Id.*
[43] *Id.*
[44] Docket No. USTR-2019-0004, *available at* https://beta.regulations.gov/document/USTR-2019-0004-0001.
[45] *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR 43304 (Aug. 20, 2019).
[46] *Id.,* 43305.

address any of the nearly 3,000 public comments submitted or any of the witness testimony given at the public hearing, except to summarily state it "takes account of the public comments and the testimony."[47]

45.     As it did when publishing List 3, for purported legal support for its action, USTR cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the Trade Act if "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or "the action . . . is no longer appropriate."[48]  Significantly, USTR did not find any increased burden on U.S. commerce from China's acts, policies, and practices that were the subject of the *Section 301 Report*; instead, USTR merely stated in conclusory fashion that China had taken "subsequent defensive actions [] to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency.[49]

46.     Less than two (2) weeks later, USTR published a notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% *ad valorem* to 15%.[50] This action was taken because soon after USTR finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods."[51]  USTR once again failed to cite any basis for this decision other than China's retreat from its negotiation commitments and devaluation of its currency.[52]

---

[47] *Id.*
[48] *Id.*, 43304.
[49] *Id.*
[50] *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR 45821 (August 30, 2019).
[51] *Id.*, 45822.
[52] *Id.*

47.     Subsequently, as a result of negotiating a limited "Phase 1" trade deal with China, USTR published notice that it would suspend indefinitely the imposition of additional punitive duties to be imposed under List 4B and that, as part of the Phase 1 deal, it would reduce the applicable tariff rate imposed under List 4A to one-half of the 15% *ad valorem* rate.[53]  No other basis for the reduction of the List 4A tariff rate was set forth by USTR.  Subsequently, the List 4A tariff rate was reduced to 7.5% *ad valorem*, effective on February 14, 2020.[54]

48.     As was done with List 1, List 2, and List 3, USTR invited the public to seek exclusions from the tariff imposed on Chinese-origin goods covered by subheadings of the HTSUS on List 4A on a product-specific basis.[55]

49.     R-Squared requested an exclusion with respect to Chinese-origin MCHEs covered by subheading 8415.90.8085, HTSUS, a subheading covered on List 4A, and USTR denied R-Squared's timely submitted exclusion request.

50.     From September 1, 2019, R-Squared and Sanhua paid and continue to pay the unlawful additional punitive duties on Chinese-origin MCHEs they import which are covered by a subheading of the HTSUS on List 4A.

## STATEMENT OF CLAIMS

### COUNT ONE
### (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

51.     The Plaintiffs reallege and incorporate by reference Paragraphs 1 through 50 of the Complaint as if fully rewritten herein.

---

[53] *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR 69447 (December 18, 2019).
[54] *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 FR 3741 (January 22, 2020).
[55] *Procedures for Requests To Exclude Particular Products From the August 2019 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 FR 57144 (October 24, 2019).

52.     The Declaratory Judgment Act provides an additional remedy where jurisdiction exists on other grounds and authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[56]  Such an additional remedy is sought and warranted in this action.

53.     The Trade Act of 1974 does not authorize the actions taken by USTR that culminated in its promulgation of the unlawful additional punitive duties imposed on Chinese-origin goods covered by subheadings of the HTSUS on List 4A, and List 3 before it.

54.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate."[57] USTR failed to support its actions culminating in promulgating List 4A (and List 3 before it) with any such determinations.

55.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated."[58]  As detailed above, USTR's actions culminating in promulgating List 4A (and List 3 before it) were taken more than twelve (12) months after USTR initiated the underlying Section 301 investigation on August 18, 2017.

56.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases.[59]

---

[56] 28 U.S.C. § 2201(a).
[57] 19 U.S.C. § 2411(b).
[58] 19 U.S.C. § 2414(a)(1)(B), (2)(B).
[59] 19 U.S.C. § 2417(a)(1)(B).

Section 307 of the Trade Act, however, does not authorize USTR to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.  Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate."[60]  Section 307 of the Trade Act, however, does not authorize USTR to escalate tariff actions that are no longer "appropriate," as its authority is limited only to the delay, taper, or termination of such actions.

57.     As USTR has exceeded the authority granted to it under the Trade Act, the Plaintiff is entitled to a declaratory judgment that USTR's actions culminating in promulgating List 4A (and List 3 before it) are *ultra vires* and contrary to law and, in turn, the remaining Defendants' actions relating to the unlawful additional punitive duties imposed and collected under List 4A are, likewise, *ultra vires* and contrary to law.

## COUNT TWO
## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

58.     The Plaintiffs reallege and incorporate by reference Paragraphs 1 through 57 of the Complaint as if fully rewritten herein.

59.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence."[61]

---

[60] 19 U.S.C. § 2417(a)(1)(C).
[61] 5 U.S.C. § 706(2).

60.    USTR exceeded its authority under the Trade Act in promulgating List 4A and, accordingly, acted not in accordance with the law and in excess of statutory authority as set forth in Count One and, in turn, the remaining Defendants' actions relating to the unlawful additional punitive duties imposed and collected under List 4A are, likewise, not in accordance with the law and in excess of statutory authority, as set forth in Count One.

61.    USTR failed to offer any record evidence for the asserted "increased burden" from China's acts, policies, and practices that were the subject of USTR's Section 301 investigation and resulting *Section 301 Report*.

62.    USTR's actions culminating in promulgating List 4A (and List 3 before it) were arbitrary and capricious because USTR failed to meaningfully consider relevant factors when making its decisions and also failed to adequately explain the rationale and support its decisions with record evidence. As such, USTR's flawed rulemaking process violated the APA and resulted in the unlawful imposition of additional punitive duties on Chinese-origin goods covered by subheadings of the HTSUS List 4A, including the MCHEs imported by the Plaintiffs since September 1, 2019.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs, R-Squared Puckett, Inc. and Sanhua Hangzhou Micro Channel Heat Exchanger Co. Ltd., respectfully requests that the Court:

(i)    declare that Defendants' actions resulting in punitive additional duties tariffs on products covered by subheadings of the HTSUS on List 4A to be unauthorized by and contrary to the Trade Act;

(ii)    declare that Defendants arbitrarily and unlawfully promulgated List 4A in violation of the APA;

(iii)    vacate the List 4A rulemaking;

(iv)    order Defendant CBP to refund, with interest, all duties paid by the Plaintiffs pursuant to List 4A;

(v)    permanently enjoin Defendants from applying the unlawful additional punitive duties covered by subheadings of the HTSUS on List 4A against Plaintiff and collecting any such duties from Plaintiff pursuant to List 4A;

(vi)    award Plaintiffs costs and reasonable attorney fees; and

(vii)    grant such other and further relief the Court deems proper.

 /s/ *Jon P. Yormick*
Jon P. Yormick
*Attorney for Plaintiffs R-Squared Puckett, Inc.*
 *and Sanhua Hangzhou Micro Channel Heat*
 *Exchanger Co. Ltd.*
FLANNERY | GEORGALIS, LLC
1375 E. 9th St., 30th Floor
Cleveland, OH 44114
T: 216.928.3474
M: 216.269.5138
E: jyormick@flannerygeorgalis.com

Dated:  November 2, 2020

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on

November 2, 2020, copies of Plaintiff's Summons and Complaint were served on the following

parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

General Counsel Joseph L. Barloon
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229


*/s/ Jon P. Yormick*
Jon P. Yormick